Good morning, your honors. May it please the court and counsel, I am Helen Cocomo, attorney for the employer, the Village of Romeoville, in this matter. The matter before the court is a 19B petition filed by Donna Kemper seeking prospective medical treatment. The issues that were presented at the 19B hearing before Arbitrator Falcioni were accident, causation, and prospective medical for a lumbar fusion surgery. Arbitrator Falcioni issued a decision finding that the claimant's need for fusion surgery was not causally connected to the May 22nd, 2002 accident as claimed by the petitioner. The commission reversed the decision of the arbitrator and awarded the prospective medical treatment. The commission decision was then confirmed by the Will County Circuit Court. This matter was appealed to this appellate court because the decision of the commission is against the manifest weight of the evidence. An analysis of the facts in this case can lead to only one conclusion, which was the arbitrator's conclusion, and that is that Ms. Kemper's herniated disc injuries were not causally connected to the May 22nd, 2002 motor vehicle accident she claims. And that is why? Because of the incident with the arrest on October 7th, 2002? That's one of the reasons. I'll go through the reasons that we have. Documented evidence shows that Ms. Kemper recovered from all the injuries she sustained on May 22nd, 2002. Immediately after that accident, she received emergency room treatment, then she treated with her family physician, received some physical therapy, and was released back to work and was in fact working and not receiving any more treatment. Both her treating physician, Dr. Shy and Dr. Mather, who she was referred to by Dr. Shy, diagnosed Ms. Kemper with thoracic strain and both noted in their reports that Ms. Kemper did not have any radiating pain and released her eventually to full-duty work. So for that reason alone, that injury had reached MMI and it was, she had fully recovered. But what do you make about the commission? And it is true, there is the case of Vogel v. Industrial Commission, which stands for the proposition when a claimant's condition is weakened by a work-related accident, a subsequent accident that aggravates that condition does not break the causal chain. Well, first of all, we have no evidence that her condition was weakened. There's nothing in the record indicating that. We don't? We don't have the opinion of Dr. Beatty established clearly that it was weakened? He doesn't say that? He didn't make that opinion until the next year. Well, it's still in the record, isn't it? Vogel also is a case where the claimant was still treating at the time of the intervening accident. Ms. Kemper was finished treating for this injury, distinguishing it from the Vogel case. The second reason that the commission decision must be reversed is that the basis of the opinion, which they found more credible, but Dr. Beatty's opinion is based on incomplete and a dishonest history as provided by Ms. Kemper. She failed to tell him that she had another injury in October of 2002, which caused her to seek immediate medical attention and which had radiating pain symptoms, which then caused her to or which caused her to seek immediate medical attention, which then had her physician order an MRI, which led then to a diagnosis of a herniated disc. She failed to tell, she told Dr. Shai her family physician and thereafter failed to tell any other physician about this other injury. But nevertheless, it ended up going before the commission. They were aware of that, and specifically they acknowledged it and said it appeared to be very minor. So they took that into consideration, allegedly, did they not? Well, they took, categorizing it as minor, I don't know what that was based on. The claimant is the one who went to her doctor and was complaining within days about radiating pain. She didn't consider it minor, I'm assuming, but dismissed it possibly to continue with the May 22nd claim. Well, minor in the sense that it wasn't so traumatic that it would have broke the causal connection. Again, did it aggravate a preexisting condition or did it not? And really, isn't that within the province of the commission to decide that? Well, the medical evidence But I see your point if you said there was no medical evidence. But if you look at Beatty's opinion, he provides the connection. Well, but Dr. Beatty also didn't have all the facts. He was operating with the facts as provided by Ms. Kemper. And in fact, from his deposition, he quotes his position on this, and I'll read it to you. The presence of the new disc herniation in L4-5 with the absence of any work or personal incidents since the original surgery would seem to connect her back problems with her original back situation. And it is my opinion, and he goes on, he talks about the absence of any other accidents. Well, he didn't know there was another accident. So maybe his opinion would have changed. He didn't have all the information. So for that reason, the decision of the commission should be reversed because it relies on Dr. Beatty, and Dr. Beatty's opinion is flawed because it's based on incomplete and dishonest information. Third reason that the commission decision is against the manifest way to the evidence is that the commission fails to address the undisputed evidence that seven years have elapsed from Ms. Kemper's back strain in 2002 and the 2009 diagnosis of a new disc herniation. There needs to be a common sense analysis of this issue. Ms. Kemper testified at the arbitration hearing that she worked continuously from 2003 until 2009 at her full duty as a lawyer. And then she has a new disc herniation. Relating a new disc herniation in 2008-2009 back to 2002 is, I think, ludicrous. And, you know, there's a case wire that I cited that states that a diagnosis made of a, I think it was a labral tear two years after an accident is too long of a period of time. So for the reasons stated, we ask that the decision of the commission be reversed and the arbitrator Falcioni's decision be reinstated. Thank you, counsel. Counsel, please. Thank you. May it please the court, Dan Collins from the law firm of Crow Bonjour, and I'm given on behalf of the counsel to raise the contention that it's been seven years for the need for fusion, that that is somehow ludicrous. I think overlooks a couple of important factors. She had the surgery in 2003, a laminectomy surgery, and at that time she had actually discussed with Dr. Beatty having a fusion surgery. So Dr. Beatty is on record back in 2003 already talking about the possible need for fusion. I think this is a situation where they made a decision between doctor and patient to go for a lesser surgery and then see how, see what happens. Donna Kemper goes back and sees Dr. Beatty in 2005 and again discusses with him a possible need for fusion surgery. She goes back in 2007, 2008, and again now they're talking about doing a fusion surgery. So I think it's a bit of a misconception to suggest that she's strictly gone from the accident until this time in 2008 and all of a sudden there's a need for fusion. This has been an ongoing discussion between the doctor and the patient. With respect to this incident that occurred in October, I know counsel classified that my client sought immediate medical care, and again, the medical records do not support such a finding. This incident, she went and saw Dr. Shai on October 15th. That was eight days after this alleged incident. There's no way that that can be classified as immediate medical care. And just as importantly, when counsel indicates that my client was done with her medical treatment and that everything had resolved, that's not exactly correct either, because when she saw Dr. Mather in August, Dr. Mather scheduled her for a surgery on October 31st. So she was already scheduled to go back to see Dr. Mather. Dr. Mather had not released her. And I think, again, when you talk about how serious was this incident that occurred on October 7th, I think the commission correctly classified it as a very minor. She didn't seek immediate medical care. When she went and saw Dr. Shai, Dr. Shai didn't order up all sorts of diagnostic testing. There was no immediate medical care. Dr. Shai was aware of the fact that my client was going to go see Dr. Mather at the end of October. She didn't insist that it be moved up. So this was a bit of a red herring at trial. My client, when asked about it, the testimony actually was very brief. Didn't really have much knowledge of the event. There was no incident report that was filled out. So I think the commission looked at all those factors and made the determination that that's why it was very minor. Counsel, when Dr. Beatty rendered his causation opinion, was he aware of the October 7th, 2002 incident? I do not believe that he was aware of that incident. So counsel is saying, therefore, his opinion is flawed. Well, actually, the quote that she read to you, though, was that he was aware of no accident or injury since the time of surgery. Those were the opinions that he was expressing in counsel's quote right there. And that is accurate because that incident occurred before the injury. What I would suggest is this was a, again, because it was a very minor incident, it was not something that was noted by Dr. Mather. It wasn't something that was noted by Dr. Beatty. Although Dr. Beatty or Dr. Mather, when the client goes back to see him, October 31st says she's back here for, you know, I think that speaks volumes of just how insignificant this issue truly was.    I'm going to ask you a question. Did Dr. Spencer's opinion conflict with Dr. Beatty's opinion? Dr. Spencer's opinion, so he wrote two reports. His first one chastised my client quite a bit for being overly dramatic in her presentation that day. Subsequent to that, there was a new MRI taken which showed... Overly dramatic? That's his words. He was suggesting that she needed psychiatric help because of her presentation at the time of that first IME. Subsequent to that, a new MRI was ordered which showed this central disc herniation. When that was produced and given to Dr. Spencer, Dr. Spencer wrote a very different toned second IME report in which he backed away and said this completely explains why she was feeling the way that she was feeling. I withdraw my comments about her psychiatric treatment and I completely agree with the need for surgery. Now, the interesting issue that Dr. Spencer writes is he talks about the length of time between the initial accident and this need for fusion surgery. And what he says is, in general, the longer we get away from an incident, from a traumatic incident, the more difficult it may be to relate this. But then Dr. Spencer never goes the next step and says, and in this case, that's exactly what's happened. We have too much length of time that's transpired here. So in their brief, they point to Dr. Spencer's opinion as saying Dr. Spencer has said seven years is too long. I think that's taking what he said a step too far. He just said simply in general. And I think Dr. Beatty went through a very lengthy discourse on what happens to a disc once you have surgery. Once you take that bone out, it's changed. And he cited the studies that suggest that there can be a recurrence of a herniation. And while it's new in name, it's still very much a part of the ongoing process, very much a reaction of what happened from the underlying laminectomy surgery. Based upon the record, we would ask that you affirm the decision of the commission. Thank you. I need to point out that the current MRI, which is the reason that the fusion surgery was being sought, found a new disc herniation in 2009. Was it in 2008? Yeah, 2009. There was another MRI done in 2005, which is subsequent to the 2002 accident dates, subsequent to the 2003 surgery, which didn't show this herniation. So this is a whole new issue that doesn't relate back in any way, shape, or form to either of the accident dates. So, again, I ask that you reverse the decision of the commission. Thank you. Of course, we'll take the matter under his guidance for disposition.